UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ADVOCACY CENTER**                                                        **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                          NO.: 3:12-cv-00508-BAJ-SCR

### RULING AND ORDER

Before the Court is Plaintiff's request for an award of attorneys' fees and litigation expenses, as well as various other motions related to Plaintiff's request. Specifically, this Order addresses: (1) Plaintiff's MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS **(Doc. 25)**; (2) Plaintiff's MOTION FOR PERMISSION TO LATE FILE ITS MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS **(Doc. 26)**; (3) Defendants' EX PARTE MOTION FOR EXTENSION OF TIME **(Doc. 27)**; (4) Defendants' MOTION TO STRIKE EXHIBITS ATTACHED TO PLAINTIFFS' [sic] MOTION FOR ATTORNEYS' FEES **(Doc. 29);** and (5) Plaintiff's UNOPPOSED MOTIONS FOR LEAVE TO FILE A REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS **(Doc. 32; Doc. 35).** The Court will consider each motion in turn. Oral argument is not necessary.

### I. BACKGROUND

Plaintiff Advocacy Center is the agency designated by federal law to represent, and advocate on behalf of, individuals with disabilities in the state of

Louisiana. (Doc. 1 at ¶ 1). On August 17, 2012, Advocacy Center sued Defendants James LeBlanc—Secretary of the Louisiana Department of Public Safety and Corrections—and Burl Cain—Warden of the Louisiana State Penitentiary ("LSP")—in their official capacities, alleging various violations of federal law pursuant to 42 U.S.C. § 1983. (*Id.* at ¶¶ 28–33). In substance, Advocacy Center alleged that Defendants violated various federal statutes—including the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15001 *et seq.*; and the Protection and Advocacy of Individual Rights Program, 29 U.S.C. § 794e—by refusing "to provide the Advocacy Center and its agent[s] . . . with access to prisoners and . . . prison records," or otherwise allow Advocacy Center to investigate complaints of "excessive heat" in cellblocks on LSP's Death Row. (*Id.* at ¶¶ 25–26, 32).[1]

On March 14, 2013, counsel for Defendants notified the Court that the parties had reached an agreement to settle Advocacy Center's Complaint. (Doc. 19). Thereafter, on March 26, the parties filed a 23-page Settlement Agreement with the Court. (Doc. 21). On June 17, this Court approved the terms of the Settlement Agreement. (Doc. 24). The Court's Order adopting the Settlement Agreement was

---

[1] In a related cause of action, this Court ruled that the summertime heat index in cellblocks on LSP's Death Row creates unconstitutional conditions of confinement in violation of the Eighth Amendment to the U.S. Constitution, and ordered Defendants to "immediately develop a plan to reduce and maintain the heat index in the Angola death row tiers at or below 88 degrees Fahrenheit." *Ball v. LeBlanc*, No. 13-368, ___ F. Supp. 2d ___, 2013 WL 6705141 at *44 (M.D. La. Dec. 19, 2013).

docketed the next day, June 18. (*Id.*). The various motions regarding attorneys' fees that are the subject of this Order followed.

## II. DISCUSSION

### a. Plaintiff's MOTION FOR PERMISSION TO LATE FILE ITS MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS (Doc. 26)

In addition to its substantive terms, the Settlement Agreement provided: "The parties will address [Plaintiff's] claim for reasonable attorney's fees in a separate stipulation or other filing with the Court." (*Id.* at p. 3). The Agreement did *not* specify a date by which the parties would stipulate to a fee award, nor did it specify a date by which Plaintiff would file a motion requesting attorneys' fees and/or costs. (*See generally id.*).

As stated, the Court's Order adopting the parties' proposed Settlement Agreement was docketed on June 18, 2013. (Doc. 24). Typically, a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Thus, assuming that the docket date of the Court's Order adopting the Settlement Agreement is equivalent to the judgment date, Plaintiff's motion for attorneys' fees was due no later than July 2, 2013 and, indeed, Plaintiff filed its motion for fees on July 2.[2] (Doc. 25).

---

[2] Plaintiff's Motion states that its request for attorneys' fees "was due to be filed on July 1, 2013." It is unclear how Plaintiff's arrived at this date, given that the Settlement Agreement failed to specify a due date and, as stated above, Plaintiff otherwise had fourteen days from the entry of the Court's Order adopting the Agreement to file its Motion. In any event, Defendants do not object that Plaintiff's fee request was untimely.

3

Accordingly, there was no need for Plaintiff to request permission "to late file [its] motion for Attorneys' Fees, Litigation Expenses and Costs," (Doc. 26 at p. 3), and this Motion will be DENIED AS MOOT.

### b. Defendants' EX PARTE MOTION FOR EXTENSION OF TIME (Doc. 27)

This Court's local rules provide that a "respondent opposing a motion shall file a response . . . within 21 days after service of the motion." M.D. La. LR7.4. The local rules also provide, however, that "[u]pon certification by a moving party that there has been no previous extension of time to plead and that the opposing party has not filed in the record an objection to an extension of time, then on an ex parte motion and order, the court will allow one extension for a period of 21 days from the time the pleading would otherwise be due." *Id.* at LR7.6.

As stated, Plaintiff filed its Motion for an Award of Attorney's Fees, Litigation Expenses and Costs on July 2, 2013. Accordingly, Defendants' opposition memorandum, if any, was due July 23. On July 22, Defendants filed their Ex Parte Motion for Extension of Time requesting "an additional 21 days in which to respond to the Motion for Attorney's [sic] Fees," and certifying that "no previous extension of time [had been] granted." (Doc. 27 at ¶¶ 3–4). Plaintiff did not object to this request, and on August 13, 2013—twenty-one days after the initial July 23 due date—Defendants filed their Opposition to Motion for an Award of Attorneys' Fees, Litigation Expenses and Costs. (Doc. 28). Accordingly, the Court GRANTS

4

Defendants' Ex Parte Motion for Extension of Time and accepts their opposition memorandum as timely-filed in accordance with Local Rule 7.6.

### c. Plaintiff's UNOPPOSED MOTIONS FOR LEAVE TO FILE A REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS (Doc. 32 and 35).

After Defendants' filed their opposition to Plaintiff's request for fees and litigation expenses, Plaintiff filed two unopposed motions requesting an opportunity to file a reply. (Doc. 32; Doc. 35). These motions will likewise be GRANTED.

### d. Defendants' MOTION TO STRIKE EXHIBITS ATTACHED TO PLAINTIFFS' [sic] MOTION FOR ATTORNEYS' FEES (Doc. 29)

In addition to their memorandum opposing Plaintiff's fee request, Defendants' filed a motion requesting that the Court strike certain affidavits appended to Plaintiff's motion for fees, stating that these "affidavits were produced by persons who are in no way related to the case, and nothing in their affidavits will help this court formulate a decision on the request for attorneys' fees." (Doc. 29 at p. 1). Specifically, Defendants' object to the Court's consideration of affidavits provided by: Curtis L. Decker (Doc. 25-8); William Quigley (Doc. 25-9); and Jennifer J. Rosenbaum (Doc. 25-10). (Doc. 29 at p. 1). Plaintiff opposes Defendants' Motion to Strike. (Doc. 33).

As will be fully explored in the next section, calculating attorneys' fees requires the Court to first determine a "'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the

5

participating lawyers," and then to "adjust[ that fee] upward or downward depending on the circumstances of the case." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The Court has little trouble determining that the challenged affidavits are relevant—indeed, *critical*—to this inquiry. Affiants William Quigley and Jennifer Rosenbaum are each experienced civil rights attorneys of longstanding in Louisiana, and have provided their opinion as to the proper "reasonable hourly rates for the participating lawyers" here. (*See* Doc. 25-9 at ¶¶ 1–5 (Declaration of William Quigley); Doc. 25-10 at ¶¶ 1–9 (Declaration of Jennifer Rosenbaum). Such evidence is precisely the type that a Court *should* consider when determining an attorney's reasonable hourly rate. *See Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market rates in the community"). Affiant Curtis Decker is the Executive Director of the National Disability Rights Network, and has provided his assessment of the unique challenges involved in litigation to enforce the statutory rights of disabled incarcerates. (Doc. 25-8 at ¶¶ 5–7). Decker's testimony is relevant to the second step in the fee award analysis—specifically, whether the lodestar fee should be adjusted upward or downward due to the circumstances of the case. *Migis*, 135 F.3d at 1047; *see also id.* (indicating that the "factors" for determine whether to adjust the "lodestar figure" include "the time and labor required for the litigation," and "the 'undesirability' of the case").

Accordingly, Defendants' Motion to Strike these exhibits is DENIED.

### e. Plaintiff's MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS (Doc. 25)

Having disposed of the procedural matters, the Court may now consider the core issue: Plaintiff's request for reimbursement of fees, litigation expenses, and costs. (Doc. 25).

Title 42, United States Code § 1988 provides: "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "The calculation of attorney's fees involves a well-established process." *Migis*, 135 F.3d at 1047. "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Id.* The factors which justify an upward or downward adjustment of the lodestar fee are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*

Originally, Plaintiff requested "a total of $57,294.98 to compensate it for the time spent and the expenses incurred by its counsel in this case." (Doc. 25 at p. 1). This request was based on a lodestar fee consisting of: (1) $49,376.25 for the services Ronald K. Lospennato[3]; and (2) $6,512.00 for the services of Miranda E. Tait[4]; and an additional $1,406.73 for litigation expenses and costs. (Doc. 25-2 at ¶¶ 5, 14). Plaintiff has since stated that Mr. Lospennato's fee should be reduced by .40 hours for a duplicate timesheet entry on September 5, 2012. (Doc. 35-1 at p. 11 n.22).

Defendants challenge nearly every aspect of Plaintiff's request for fees and costs. (*See* Doc. 28). Plaintiff has been allowed to file a reply to Defendants' opposition. (*See* Doc. 35-1). Upon independent review, the Court determines that *some*, but not all of Defendants' objections are well-taken.

   *i.  Reasonable Number of Hours Expended on the Case*

The Court begins by assessing whether the number of hours claimed by Plaintiff's attorneys is reasonable. *See Migis*, 135 F.3d at 1047. As the fee applicant, Plaintiff "bears the burden of proving that the number of hours for which compensation is requested is reasonable." *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th

---

[3] Plaintiff arrived at Mr. Lospennato's fee by multiplying 148.50 hours expended by $350.00/hour, and then reducing the resulting fee of $51,975.00 by 5% in an "exercise of billing judgment." (Doc. 25-2 at ¶¶ 5, 7).

[4] Plaintiff arrived at Ms. Tait's fee by multiplying 23.68 hours expended by $275.00/hour. (Doc. 25-2 at ¶ 5).

8

Cir. 1996). Local Rule 54.2 provides specific guidance regarding how this burden is met, stating: "the party desiring to be awarded such fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report shall be in both narrative and statistical form and provide hours spent and justification thereof." M.D. La. LR54.2. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Cooper*, 77 F.3d at 832 (quotation marks omitted); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) ("[A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*." (emphasis in original)).

Here, Plaintiff has provided contemporaneous timesheets kept by Mr. Lospennato and Ms. Tait, which, with *limited exception*, adequately "reflect[] the date, time involved, and nature of the services performed." (M.D. La. LR54.2). In general, these timesheets demonstrate that Plaintiff's attorneys: (1) exercised billing judgment, (*e.g.* Doc. 25-4 at p. 8 (Mr. Lospennato's timesheets indicating that he declined to bill 2.0 hours for work performed from September 10–13, 2012); Doc. 25-7 (Ms. Tait's timesheets indicating that she declined to bill 4.0 hours for work performed on September 14, 2012); *see also* Doc. 25-2 at ¶ 8 ("In the exercise of billing judgment, the Advocacy Center's counsel also reduced the fee request for Attorney Lospennato's time by an additional 5%.")); (2) avoided duplicate billing by distributing discrete tasks between two lawyers, (*see* Doc. 25-2 at ¶ 10); and (3)

9

avoided "block billing"—*i.e.* "time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks," (*see generally* Doc. 25-4; Doc. 25-7). *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (quotation marks omitted)).

Nevertheless, the Court agrees with Defendants' objections as to *certain* hours claimed by Mr. Lospennato and Ms. Tait. First, the Court agrees with Defendants' objection that Mr. Lospennato's entry of .40 hours for "[e]mail and t/c with Balsamo re Angola visit" is duplicative, (Doc. 28 at pp. 8–9 & n.9; *see* Doc. 25-4 at p. 7), particularly in light of Plaintiff's concession that it "cannot explain this apparent duplication," (Doc. 35-1 at p. 11 n.22). Accordingly, this entry will be excluded from the Court's calculation of Mr. Lospennato's reasonable hours. Next, the Court agrees with Defendants' objection that Mr. Lospennato's entry of 8.75 hours for "[o]rganiz[ing], edit[ing] and fil[ing] case in US District Court for Middle District of Louisiana" is impermissibly block-billed, (Doc. 28 at p. 14; *see* Doc. 25-4 at p. 4). *See Autozone*, 934 F. Supp. 2d at 354. This entry will likewise be excluded. *See Cooper*, 77 F.3d at 832. Finally, the Court agrees with Defendants' objection to Ms. Tait's "entry for 1.18 hours on 8/17/12" because this entry "is not . . . a recognized billing increment." (Doc. 28 at p. 16; *see* Doc. 25-7). By the Court's own estimation, .18 hours is equivalent to 10.8 minutes, an exceedingly strange billing

increment. This entry will be reduced to 1.1 hours, a universally-recognized increment. *See Cooper*, 77 F.3d at 832.

Accordingly, having thoroughly reviewed Plaintiff's timesheets and Defendants' objections, the Court reduces "the reasonable number of hours expended on the case" as follows: Mr. Lospennato's hours are reduced by 9.15 hours, rendering a total of **139.35 hours**; Ms. Tait's hours are reduced by .08 hours, rendering a total of **23.60 hours**. *Migis*, 135 F.3d at 1047; *see Cooper*, 77 F.3d at 832.[5]

### ii. Reasonable Hourly Rate

As noted, the "lodestar fee" is calculated "by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Migis*, 135 F.3d at 1047 (quotation marks omitted). An attorney's reasonable hourly rate should be "in line with those prevailing in the

---

[5] In addition to specific complaints that certain of Plaintiff's billing entries are vague, incomplete, and/or block-billed, Defendants offer a global objection that "[a]ll entries . . . concerning the standard for excessive heat and 8th Amendment claims should be disregarded as [they] pertain[] to the underlying investigation [into conditions at LSP] and not to the instant lawsuit." (Doc. 28 at p. 6). Defendants offer no legal support for this objection. (*See id.* at pp. 5–11). In any event, it is misplaced. First, as noted by Plaintiff, any activities by Plaintiff's counsel *prior* to and including August 24, 2012 are necessarily *excluded* from Plaintiff's investigation into prison conditions because prior to that date, "Plaintiff's efforts to investigate were blocked by Defendants." (Doc. 35-1 at p. 3). Indeed, Defendants' refusal to allow Plaintiff access to LSP is precisely what *this* litigation is all about. (*See* Doc. 1 at ¶ 1). Further, the Court is satisfied that all entries *following* August 24, 2012 are compensable because they were aimed at securing the Court-approved Settlement Agreement that brought this litigation to a close. (*See* Doc. 25-4 at pp. 6–20; Doc. 25-7; Doc. 35-1 at pp. 3–6; *see also* Doc. 24). *Cf.* Farrar v. Hobby, 506 U.S. 103, 111–12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989) ("A prevailing party [is] one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation.").

community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also Leroy v. City of Houston*, 906 F.2d 1068, 1078–79 (5th Cir. 1990) ("In evaluating an attorneys' fees award, we are guided by the overriding principles that a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys . . . ." (quotation marks and alterations omitted)). The Fifth Circuit has emphasized that "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quotation marks omitted).

The party applying for attorney's fees bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rate. *Kellstrom*, 50 F.3d at 324. "[A] mere conclusory statement that [a] fee [is] reasonable" is insufficient for calculating the lodestar fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Instead, "[t]o inform and assist the court in [determining the reasonable rate]," the fee applicant should produce an affidavit of the attorney performing the work, information of rates actually billed and paid in similar lawsuits, *see Blum,* 465 U.S. at 896 n.11, as well as "affidavits of other attorneys practicing [in the community in question]," *Tollett*, 285 F.3d at 368. *See, e.g., Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market

12

rates in the community"). In addition to the community rate, "a court considers the attorneys' regular rates" when determining a reasonable rate. *Kellstrom*, 50 F.3d at 328.

Here, Plaintiff has produced affidavits from Mr. Lospennato and Ms. Tait attesting to their experience and the rates that they regularly charge. (*See* Doc. 25-2 at ¶¶ 11–15 (Lospennato's Affidavit stating, among other things: "My rate and Ms. Tait's hourly rate[] of $350 and $275, respectively, are in accordance with prevailing rates in . . . the community in which we practice"); *see also* Doc. 25-5 at ¶¶ 2–8)). Additionally, Plaintiff has produced affidavits from William Quigley and Jennifer Rosenbaum—seasoned civil rights lawyers practicing in Louisiana—indicating that Mr. Lospennato's and Ms. Tait's requested fees are well-within the range of fees billed and paid in comparable lawsuits in Baton Rouge—"the community in which [this] court sits," *Tollett*, 285 F.3d at 368 (quotation marks omitted)—and New Orleans.[6] (*See* Doc. 25-9 at ¶ 2 (Quigley Affidavit stating that "[i]n a recent civil rights case, though I sought $450 an hour, the State of Louisiana stated I should be paid $350 an hour"); Doc. 25-10 at ¶ 5 (Rosenbaum Affidavit stating that "[r]ecently this Court assessed fees at . . . a rate of $300 for my hours spent representing an immigrant worker . . . related to conditions of his immigration arrest"). Finally, Plaintiff points to comparable cases from the Middle

---

[6] Of course, this Court does *not* sit in New Orleans. Previously, however, this Court has recognized that prevailing rates in New Orleans are informative when determining prevailing rates in Baton Rouge, observing that "[s]ince [Hurricane] Katrina, the size of New Orleans and Baton Rouge has become more comparable, resulting in a similar legal market." *Stogner v. Sturdivant*, No. 10-125, 2011 WL 6140670 at *2 n.4 (M.D. La. Dec. 9, 2011) (order granting attorneys' fees).

District of Louisiana where parties were awarded attorneys' fees in the range sought by Mr. Lospennato and Ms. Tait. (*See* Doc. 25-1 at pp. 9–10).

In sum, the Court determines that Mr. Lospennato's fee of **$350/hour** and Ms. Tait's fee of **$275/hour** are each reasonable, given their respective experience and expertise, and the current prevailing rates in the Middle District of Louisiana.

### iii. *Plaintiff's lodestar fee*

Consequently, the Court finds: (1) the appropriate lodestar fee for Mr. Lospennato is **$46,333.87,** consisting of **139.35 hours billed at a rate of $350.00/hour, and reduced by "an additional 5%"** consistent with counsel's "exercise of billing judgment" submitted with Plaintiff's fee request, (Doc. 25-2 at ¶ 7); (2) the appropriate lodestar fee for Ms. Tait is **$6,490.00,** consisting of **23.60 hours billed at a rate of $275.00/hour**; yielding (3) a combined lodestar fee of **$52,823.87.**

### iv. *Whether to adjust Plaintiff's lodestar fee*

Now the Court must assess whether the lodestar figure should be adjusted upward or downward. *Migis*, 135 F.3d at 1047. As noted, the factors which justify an upward or downward adjustment of the lodestar fee are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in similar cases.

*Id.*

Here, the Court finds that these factors do not warrant any additional adjustment from the lodestar amount. Indeed, many of these factors were subsumed in the original lodestar estimate. *See Hensley,* 461 U.S. at 434 n. 9. Accordingly, the Court determines that a fee award of **$52,823.87** is reasonable compensation for the attorneys' efforts in this case.

### v. Reasonable Costs

This Court's local rules provide that a prevailing party may request an award of costs "necessarily incurred." M.D. La. LR54.3. Plaintiff requests an award of litigation expenses and costs in the amount of $1,406.73. (Doc. 25-1 at p. 11). Defendants object to this request, asserting: (1) "Plaintiff has provided no documents to support any of these costs"; and (2) certain claimed costs "cannot be passed on to Defendants" because they related to the "underlying investigation." (Doc. 28 at p. 19).

The Court is not persuaded by Defendants' objections. First, contrary to Defendants' claim that "no documents" support an award, Plaintiff's costs request is substantiated by Mr. Lospennato's affidavit, which itemizes and explains each of the expenses Plaintiff seeks to have reimbursed. (Doc. 25-2 at ¶ 14). Next—as explained previously, *supra* n.5—this Court rejects Defendants' attempt to distinguish between the "underlying investigation," and the issues at stake in *this*

litigation, because it finds that each of the costs claimed here was necessary to achievement of the Settlement Agreement that served as the judgment in this case. *See* M.D. La. LR54.3.

Accordingly, litigation expenses and costs in the amount of **$1,406.73** will also be assessed against Defendants.

### III. CONCLUSION

In sum,

**IT IS ORDERED** that Plaintiff's **MOTION FOR PERMISSION TO LATE FILE ITS MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS (Doc. 26)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' **EX PARTE MOTION FOR EXTENSION OF TIME (Doc. 27)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's **UNOPPOSED MOTIONS FOR LEAVE TO FILE A REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS (Doc. 32; Doc. 35)** are each **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' **MOTION TO STRIKE EXHIBITS ATTACHED TO PLAINTIFFS' [sic] MOTION FOR ATTORNEYS' FEES (Doc. 29)** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's **MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS (Doc. 25)** is

**GRANTED.** Specifically, Plaintiff is awarded attorneys' fees in the amount of **$52,823.87,** and litigation fees and costs in the amount of **$1,406.73,** yielding a total award of **$54,230.60.**

Baton Rouge, Louisiana, this 24th day of March, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**